**[ORAL ARGUMENT NOT SCHEDULED]**

**Nos. 24-5163, 24-5170**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

————————————

CAMPAIGN FOR ACCOUNTABILITY,

Plaintiff-Appellee/Cross-Appellant,

v.

U.S. DEPARTMENT OF JUSTICE,

Defendant-Appellant/Cross-Appellee.

————————————

On Appeal from the United States District Court
for the District of Columbia

————————————

**RESPONSE/REPLY BRIEF FOR APPELLANT/CROSS-APPELLEE**

————————————

BRETT A. SHUMATE
  *Acting Assistant Attorney General*

MICHAEL S. RAAB
DANIEL TENNY
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7215*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-1838*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..................................................................................... ii

GLOSSARY ........................................................................................................ iv

SUMMARY OF ARGUMENT ............................................................................ 1

ARGUMENT ...................................................................................................... 3

    OLC OPINIONS ARE PRIVILEGED AND ARE NOT SUBJECT TO THE
    READING-ROOM PROVISION .......................................................................... 3

    A.    This Court's decision in *Electronic Frontier Foundation*
        controls. ................................................................................................3

    B.    Plaintiff identifies no category of OLC opinions that
        should be treated differently. .........................................................13

        1.    Plaintiff's arguments amount to an effort to
            repudiate *Electronic Frontier Foundation*. .............................13

        2.    OLC opinions resolving interagency disputes are
            not subject to mandatory disclosure. .................................16

        3.    OLC opinions relating to agency adjudications are
            not subject to mandatory disclosure. .................................21

        4.    OLC opinions are not subject to mandatory
            disclosure based on the degree to which they
            constrain an agency's discretion. ........................................23

    C.    Plaintiff's policy arguments are mistaken. ...................................25

CONCLUSION .................................................................................................. 28

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Cases:**                                                                                 **Page(s)**

*Afshar v. Department of State,*
  702 F.2d 1125 (D.C. Cir. 1983) .......................................................................... 12

*American Immigration Lawyers Ass'n v. Executive Office for Immigration Review,*
  830 F.3d 667 (D.C. Cir. 2016) ...................................................................... 2, 13

*Brinton v. Department of State,*
  636 F.2d 600 (D.C. Cir. 1980) ...................................................................... 9, 24

*Citizens for Responsibility & Ethics in Washington v. U.S. DOJ,*
  922 F.3d 480 (D.C. Cir. 2019) .......................................... 1, 5, 7, 10, 11, 14, 15

*Coastal States Gas Corp. v. Department of Energy,*
  617 F.2d 854 (D.C. Cir. 1980) ...............................................................................6

*Electronic Frontier Found. v. U.S. DOJ,*
  739 F.3d 1 (D.C. Cir. 2014) ...................................................... 1, 4, 6, 7, 10, 24

*Murphy v. Department of the Army,*
  613 F.2d 1151 (D.C. Cir. 1979) ...................................................... 9, 16, 23, 24

*NLRB v. Sears, Roebuck & Co.,*
  421 U.S. 132 (1975) ............................................................................... 2, 12, 19

*Public Citizen, Inc. v. Office of Mgmt. & Budget,*
  598 F.3d 865 (D.C. Cir. 2010) ...............................................................................6

*Schlefer v. United States,*
  702 F.2d 233 (D.C. Cir. 1983) ...............................................................................6,

*Skelton v. U.S. Postal Serv.,*
  678 F.2d 35 (5th Cir. 1982) ...................................................................... 12, 13

*Sterling Drug Inc. v. FTC,*
  450 F.2d 698 (D.C. Cir. 1971)...............................................................................6

*Tax Analysts v. IRS*,
   117 F.3d 607 (D.C. Cir. 1997) ............................................................6

*Tax Analysts v. IRS*,
   294 F.3d 71 (D.C. Cir. 2002) ............................................................6

**Statutes:**

Freedom of Information Act (FOIA):
   5 U.S.C. § 552(a)(2)(A) ........................................................ 2, 22
   5 U.S.C. § 552(a)(2)(B) ........................................................... 15
   5 U.S.C. § 552(b)(5) ............................................................... 5

**Regulation:**

28 C.F.R. § 0.25(a) ................................................................. 17

**Other Authorities:**

Administrative Assessment of Civil Penalties Against
   Federal Agencies Under the Clean Air Act,
   21 Op. O.L.C. 109 (1997) ...................................................... 20

U.S. Dep't of the Army, Reg. 10-5,
   *Organization and Functions* (Apr. 1, 1975) .............................. 23-24

**GLOSSARY**

| | |
|---|---|
| CREW | Citizens for Responsibility & Ethics in Washington |
| DOJ | Department of Justice |
| FBI | Federal Bureau of Investigation |
| FOIA | Freedom of Information Act |
| FTC | Federal Trade Commission |
| IRS | Internal Revenue Service |
| JA | Joint Appendix |
| NLRB | National Labor Relations Board |
| OLC | Office of Legal Counsel |
| Second MTD Op. | Opinion resolving motion to dismiss amended complaint |

## SUMMARY OF ARGUMENT

Plaintiff's brief reflects a thinly veiled effort to relitigate *Electronic Frontier Foundation v. U.S. DOJ*, 739 F.3d 1 (D.C. Cir. 2014), and *Citizens for Responsibility & Ethics in Washington v. U.S. DOJ*, 922 F.3d 480 (D.C. Cir. 2019) (*CREW*).  Plaintiff asserts that various categories of opinions issued by the Office of Legal Counsel (OLC) are subject to mandatory disclosure under the Freedom of Information Act (FOIA) because they are treated as binding within the Executive Branch and thus constitute controlling statements of law.  In *Electronic Frontier Foundation* and again in *CREW*, this Court rejected the argument that these characteristics of OLC opinions cause them to be final opinions rather than predecisional and deliberative documents that are subject to the deliberative process privilege.

Plaintiff's discussion of each of the categories of opinions at issue in this appeal suffers from this fundamental flaw.  Plaintiff argues, for example, that opinions resolving interagency disputes are subject to mandatory disclosure because they conclusively resolve the legal issues presented to OLC.  But all OLC opinions are equally conclusive with regard to the legal issues that OLC addresses.  Plaintiff's efforts to identify

other categories of opinions that are subject to mandatory disclosure similarly cannot be reconciled with *Electronic Frontier Foundation* or *CREW*.

Plaintiff's arguments are also mistaken on their own terms.  OLC opinions that resolve interagency disputes are not adjudications in the relevant sense.  Rather, the Supreme Court and this Court have explained that the phrase "final opinions . . . made in the adjudication of cases," 5 U.S.C. § 552(a)(2)(A), in the FOIA refers to an agency's resolution of claims brought under the statute the agency is charged with administering.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 158-59 (1975); *American Immigration Lawyers Ass'n v. Executive Office for Immigration Review*, 830 F.3d 667, 679 (D.C. Cir. 2016).  OLC does not administer the statutes about which it provides legal advice in its opinions.

Plaintiff is also mistaken to suggest that OLC advice to an agency that is in the process of conducting its own adjudication is a final opinion in the adjudication of a case.  An OLC opinion is no more or less deliberative if it provides advice to an agency that is adjudicating a case as opposed to contemplating some other form of agency action.  It is the agency, and not OLC, that will render the final decision in the adjudication of the case.  Just

as in all other circumstances, OLC provides legal advice to the agency that is charged with making its own final decisions.

Finally, this Court recognized in *Electronic Frontier Foundation* that OLC opinions may constrain an agency's policy options as a practical matter. The possibility that the agency may be compelled to change its policy under the law as OLC construes it does not convert OLC's opinion from legal advice to a final decision. A contrary conclusion would suggest than an agency general counsel's determination that the law prohibits an action the agency wished to take ceases to constitute privileged legal advice, a position that this Court has consistently and properly rejected.

## ARGUMENT

### OLC OPINIONS ARE PRIVILEGED AND ARE NOT SUBJECT TO THE READING-ROOM PROVISION

#### A. This Court's decision in *Electronic Frontier Foundation* controls.

Plaintiff's position cannot be reconciled with this Court's decision in *Electronic Frontier Foundation*. There, this Court held that even though OLC opinions are "controlling (insofar as agencies customarily follow OLC advice that they request), precedential, and can be withdrawn," they are still subject to the deliberative process privilege and thus not subject to

3

release under the Freedom of Information Act. *Electronic Frontier Found. v. U.S. DOJ*, 739 F.3d 1, 9 (D.C. Cir. 2014). Plaintiff identifies no feature of any category of OLC opinions before the Court that would change that analysis.

Plaintiff's primary response to *Electronic Frontier Foundation* is to change the subject. Plaintiff largely avoids discussing the deliberative process privilege, instead seeking to treat *Electronic Frontier Foundation* as inapposite because it did not discuss the FOIA's reading-room provisions. Br. 44-45. But as plaintiffs correctly observe, the deliberative process privilege and the reading-room provision are often opposite sides of the same coin. In particular, the deliberative process privilege applies to predecisional documents while the reading-room provision applies to final agency decisions, so the categories are ordinarily mutually exclusive. This Court's holding in *Electronic Frontier Foundation* that the OLC Opinion at issue there was predecisional means that it was not a final opinion or statement of policy subject to the reading-room provisions—even apart from the independently dispositive point that the FOIA's exemptions apply to the entire statute, such that privileged documents cannot be subject to mandatory disclosure regardless of whether the reading-room provisions

might otherwise apply to them, *see* 5 U.S.C. § 552(b)(5); Gov't Opening Br. 23-24. Plaintiff thus must distinguish *Electronic Frontier Foundation* to prevail here.

But plaintiff's brief consists largely of an effort not to distinguish *Electronic Frontier Foundation*, but to relitigate it. After analyzing a series of this Court's cases (all of which were discussed in *Electronic Frontier Foundation* itself), plaintiff suggests a list of five relevant factors: "whether the legal opinions (1) function as an agency's precedent, (2) are regularly and consistently followed, (3) are written in conclusive terms, (4) guide agency action prospectively, and (5) flow from those charged with interpreting the law to those charged with implementing it." Br. 53. None of these factors is materially different for OLC opinions in any of the categories set out by plaintiff than for any other OLC opinion, including the one at issue in *Electronic Frontier Foundation*. And this Court concluded in *Electronic Frontier Foundation* that the OLC Opinion at issue there was predecisional and deliberative. That should end this case, as it ended *Citizens for Responsibility & Ethics in Washington v. U.S. DOJ*, 922 F.3d 480 (D.C. Cir. 2019).

In *Electronic Frontier Foundation*, the Court discussed the various cases on which plaintiff relies here, each of which involved a decision that was directed from a superior to subordinates within the agency who were charged with carrying out the policies announced in the document at issue. *See Electronic Frontier Found.*, 739 F.3d at 7-8 (discussing *Sterling Drug Inc. v. FTC*, 450 F.2d 698 (D.C. Cir. 1971); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854 (D.C. Cir. 1980); *Public Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865 (D.C. Cir. 2010); *Schlefer v. United States*, 702 F.2d 233 (D.C. Cir. 1983); *Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997); *Tax Analysts v. IRS*, 294 F.3d 71 (D.C. Cir. 2002)).  The Court held that none of these cases was controlling as to a document that contained legal advice from OLC to the FBI because OLC does not set the FBI's policy and "[t]he OLC Opinion instead amounts to advice offered by OLC for consideration by officials of the FBI."  *Id.* at 8.  Far from applying plaintiff's proposed multifactor test, the Court held that this feature of the OLC Opinion was independently dispositive in determining whether the Opinion must be disclosed.  It is equally dispositive here.

That conclusion was not premised, as plaintiff suggests, on some peculiarity of the OLC Opinion at issue in *Electronic Frontier Foundation*.

Rather, it reflects OLC's role more generally. As explained in our opening brief, this Court recognized that "OLC is not authorized to make decisions about the FBI's investigative policy, so the OLC Opinion cannot be an authoritative statement of the agency's policy." Gov't Opening Br. 20 (quoting *Electronic Frontier Found.*, 739 F.3d at 9). By their nature, OLC opinions flow from advisers to policymakers, while the sorts of legal opinions that this Court has held to be final flow from policymakers to those charged with implementing that policy.

Plaintiff refuses to come to grips with that general, and accurate, statement about OLC's role within the Executive Branch. Instead, plaintiff describes the OLC Opinion at issue in *Electronic Frontier Foundation* as "retrospective rather than prospective in focus and offer[ing] only advice in examining policy options available to the agency." Br. 54. It is unclear why the supposedly "retrospective" nature of the Opinion—presumably a reference to the fact that it was motivated, in part, by an Office of Inspector General investigation of past conduct—would make any difference, given that the Opinion provided advice to FBI policymakers about their options going forward. *See also CREW*, 922 F.3d at 486 n.1 (rejecting argument that Opinion at issue in *Electronic Frontier Foundation* "was not 'prospective'").

7

And if the Opinion were truly retrospective, it would not be predecisional, so plaintiff's argument fails to comport with the result in *Electronic Frontier Foundation* itself.

Plaintiff's second supposed distinction, in addition to being in some tension with their first one, does not distinguish the Opinion at issue in *Electronic Frontier Foundation* from the categories of OLC opinions at issue in this appeal.  OLC opinions generally "offer[] only advice in examining policy options available to the agency"; that is what it means for OLC to lack policymaking authority, and that is precisely why OLC opinions are predecisional and deliberative.

OLC opinions are therefore subject to the deliberative process privilege as a general matter—and, for similar reasons, to the attorney-client privilege, as OLC provides confidential legal advice to its client agencies.  OLC's legal advice is no less subject to the deliberative process and attorney-client privileges than an agency general counsel's advice to policymakers within the agency.

Plaintiff accuses the government of attempting to distinguish between OLC and other entities reaching legal conclusions on the ground "that the OLC sits outside of (most of) the agencies soliciting its legal

8

opinions." Br. 54. That is not the distinction the government is making; to the contrary, in *Electronic Frontier Foundation* this Court analogized OLC to in-house legal advisors like the State Department's Office of the Legal Adviser in *Brinton v. Department of State*, 636 F.2d 600 (D.C. Cir. 1980), and the Army's General Counsel in *Murphy v. Department of the Army*, 613 F.2d 1151 (D.C. Cir. 1979). Such analogies make plain the error of plaintiff's position, as even if an agency determined—as the Army evidently had in *Murphy*—that it would not contravene the legal advice of its top legal official, there is no plausible argument that legal advice from a general counsel to an agency head must be disclosed under the FOIA.

Rather, the relevant distinction, as this Court recognized in *Electronic Frontier Foundation*, is between legal determinations that flow down from decisionmakers to those who implement policy and legal determinations that flow to policymakers who then set policy. The observation in cases like *Brinton* and *Murphy* that advice from legal offices within agencies does not flow down to policymakers applies with equal force to OLC, which lacks authority to issue policy directives to client agencies.

Relatedly, plaintiff is mistaken to suggest that any category of OLC opinions must be disclosed on the ground that it has been "adopted *ex*

9

*ante*." Br. 49 (quoting Second MTD Op. 31 [JA 267]). It is not clear what

that term is meant to signify. Every OLC opinion is "adopted *ex ante*" in

the sense that it is, by custom and practice of the Executive Branch, treated

as controlling, authoritative, and binding. But this Court has made clear

that these attributes are insufficient to render OLC opinions subject to the

reading-room provision. *CREW*, 922 F.3d at 486; *see also Electronic Frontier

Found.*, 739 F.3d at 9. That conclusion followed, as this Court explained,

from decisions accepting that even if agencies allow their own legal

advisers to establish the agency's view of the governing law (like the legal

adviser in *Brinton* or the general counsel in *Murphy*), legal advice

constitutes an input to the policymaking process rather than a final opinion

in any relevant sense.

Plaintiff has offered no explanation of why any category of OLC

opinion has been "adopted *ex ante*" any more or less than any other. The

amended complaint, to which the district court referred, cited OLC's

practice, when "asked for a formal written opinion by an independent

agency," of requiring the independent agency's prior commitment to abide

by OLC's conclusion. Am. Compl. ¶ 3 [JA 63], *cited in* Second MTD Op. 29

[JA 265]; *see also* Best Practices Mem. 3 [JA 300] ("If we are asked to provide

10

an opinion to an executive agency the head of which does not serve at the

pleasure of the President . . . , our practice is to issue our opinion only if we

have received in writing from that agency an agreement that it will

conform its conduct to our conclusion.").  The dissent in *CREW* had made a

similar point, using the Social Security Administration as an example.

*CREW*, 922 F.3d at 491 (Pillard, J., dissenting).  But plaintiff subsequently

withdrew its allegation that opinions issued to independent agencies

should be treated differently from any other OLC opinion because "OLC

has now confirmed that the express agreement that independent agencies

make to be bound by the OLC's formal written opinions is no different

than the implied agreement of non-independent agencies to be bound by

those opinions."  Second MTD Op. 8 n.4 [JA 244 n.4] (quoting Dkt. No. 30,

at 30 n.11).  This concession makes clear that the sense in which OLC

opinions are "adopted *ex ante*" merely refers to the characteristics of OLC

opinions that this Court has already considered and rejected in *Electronic*

*Frontier Foundation* and *CREW* as a basis for requiring disclosure of those

opinions under the FOIA.

      Nor can plaintiff evade the reasoning of *Electronic Frontier Foundation*

by invoking the phrase "working law"—a phrase that plaintiff

acknowledges has been used imprecisely at times, Br. 44.  As explained in our opening brief, when it focused on the issue this Court has defined that term as limited to policies and rules that create or determine substantive rights and liabilities.  *See* Gov't Opening Br. 31 (citing *Afshar v. Department of State*, 702 F.2d 1125, 1141 (D.C. Cir. 1983)).  Plaintiff provides no response.

Plaintiffs' own discussion of the term underscores that it cannot convert OLC opinions from predecisional advice into final opinions.  As plaintiff explains, the term originated with the Supreme Court's decision in *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975), which was describing the reasoning behind an agency policy decision that resolved a case involving private parties.  In particular, "[t]he documents at issue in *Sears* were legal memoranda that explained the NLRB's reasons for dismissing an unfair labor charge filed by a private party."  *Skelton v. U.S. Postal Serv.*, 678 F.2d 35, 40 (5th Cir. 1982).  That was a final decision because the "private party" had "statutorily protected rights" and invoked a "statutorily created procedure" that required the agency to make a decision.  *Id.*  The Supreme Court deemed that context "[c]rucial to the decision of th[e] case."  *Sears*, 421 U.S. at 138.  And this Court has expressly "agree[d] with th[e]

12

approach" taken by the Fifth Circuit, *American Immigration Lawyers Ass'n v. Executive Office for Immigration Review*, 830 F.3d 667, 679 (D.C. Cir. 2016), which held "that by referring to 'final opinions . . . made in the adjudication of cases,' Congress was referring to explanations of decisions in proceedings, like that in *Sears*, in which a party has a right to set the agency decision-making process in motion and obtain a determination concerning the statute or other laws the agency is charged with interpreting and administering," *Skelton*, 678 F.2d at 41 (alteration in original).  OLC is not charged with administering the laws about which it opines in its formal opinions.  Thus, neither the statutory text nor any proper conception of the term "working law" suggests that the reading-room provision applies to internal Executive Branch deliberations.

**B.  Plaintiff identifies no category of OLC opinions that should be treated differently.**

**1.  Plaintiff's arguments amount to an effort to repudiate *Electronic Frontier Foundation*.**

Although plaintiff purports to walk through the various categories of opinions that it claims should be subject to mandatory disclosure, all roads lead back to its central argument—already rejected by this Court—that because OLC opinions are treated as binding on agencies and can constrain

13

agency decisionmaking, they are final decisions rather than predecisional and deliberative documents.  Plaintiff contends, for example, that OLC opinions "are not mere 'legal advice'" but instead "use mandatory language in arriving at binding resolutions."  Br. 23; *see also* Br. 17 ("The OLC's opinions resolving those disputes are final because they dispose of the disputes through 'controlling legal advice to executive branch officials on questions of law' . . . ." (quoting Stip. ¶ 1 [JA 290])).  That is another way of saying that OLC opinions are treated as binding, which this Court has squarely held to be inadequate to distinguish them from other forms of legal advice that need not be disclosed to the public.

Plaintiff is also wrong to suggest that there must be some category of OLC opinions that is not governed by *Electronic Frontier Foundation*.  In *CREW*, this Court merely recognized that it had not held that the reasoning in *Electronic Frontier Foundation* controls all OLC opinions but instead had stated only that *Electronic Frontier Foundation* "*suggests* that *many* of OLC's formal written opinions" are privileged.  *CREW*, 922 F.3d at 489 n.6 (quoting district-court opinion; this Court's emphasis).  The Court expressly did not decide whether any such opinions would ultimately be subject to mandatory disclosure.  *See id.* at 489 & n.5 (noting, but expressly

14

declining to take a view on, the complaint in this case).  Even the dissent in

that case stated that it was "not certain at this stage how much—if any—of

OLC's output might ultimately be subject to disclosure under FOIA's

reading-room provision."  *Id.* at 490 (Pillard, J., dissenting).

Rather, the *CREW* decision is relevant insofar as it further refutes

plaintiff's limited understanding of *Electronic Frontier Foundation*.  The

Court noted that "statements of policy and interpretations" are subject to

the reading-room provision only if they "have been adopted by the

agency," 5 U.S.C. § 552(a)(2)(B), and thus held that an OLC opinion in that

category could be subject to the reading-room provisions only if it had

been adopted by an agency as its own.  *CREW*, 922 F.3d at 486-87.  As we

explained in our opening brief, the obligation to affirmatively disclose such

an opinion would fall on the adopting agency.  Gov't Opening Br. 19.  But

for purposes of this case, that distinction does not matter in any event, as

plaintiff does not identify any opinions that have been adopted by agencies

and instead seeks disclosure of categories of opinions much broader than

those that have been so adopted.

15

### 2. OLC opinions resolving interagency disputes are not subject to mandatory disclosure.

In addition to failing to adequately account for *Electronic Frontier Foundation*, plaintiff's discussion of the individual categories of opinions at issue in this appeal reflects an erroneous understanding of those categories. As to opinions resolving inter-agency disputes, plaintiff is mistaken to suggest that "when two agencies present their dispute to the OLC, neither is engaged in a deliberation over policy." Br. 48. Agencies will only seek advice from OLC when they have not finalized their policies, or when they are considering changing them, as OLC generally provides written opinions only when there is "a practical need for the written opinion." Best Practices Mem. 3 [JA 300]. And if two agencies have differing legal views, they seek OLC's advice precisely to help them select a policy consistent with the applicable law. This circumstance is no different from the one considered in *Murphy*, where the Army was working on a project but considered whether to stop work based on its General Counsel's legal conclusions regarding the validity of the underlying contract. *See Murphy*, 613 F.2d at 1154 n.9.

16

Much of plaintiff's argument proceeds on the erroneous premise that OLC's issuance of an opinion in response to a disagreement among agencies is the "final opinion" in the "adjudication" of a "case." The resolution of a legal dispute does not always amount to the adjudication of a case; advisory opinions of a court, for example, do not qualify as a case or controversy for purposes of Article III. Most relevant here, if two components of an agency disagreed on how to proceed and presented their arguments to the agency's general counsel for a legal determination, the resulting legal opinion would not be naturally described as the final opinion in the adjudication of a case. In the context of the reading-room provision in particular, as explained above, the phrase "adjudication of a case" refers to adjudications of disputes involving private entities before an agency that result in final decisions under the Administrative Procedure Act. *See supra* p. 13. It does not refer to internal Executive Branch deliberations.

The procedures by which OLC resolves such disputes bear little resemblance to the procedures used by legal tribunals to resolve legal disputes. OLC is not a tribunal, but an adviser. *See* 28 C.F.R. § 0.25(a) (providing that OLC "render[s] informal opinions and legal advice to the

17

various agencies of the Government" and "assist[s] the Attorney General in the performance of his functions as legal adviser to the President and as a member of, and legal adviser to, the Cabinet").  OLC "generally avoid[s] characterizing agencies with differing views as the 'prevailing' and 'losing' parties."  Best Practices Mem. 4 [JA 301].  More fundamentally, unlike courts, OLC does not issue orders requiring any agency—or anyone else—to do anything.  And OLC neither regulates nor has any responsibilities toward any member of the public.

The development of OLC opinions is a collaborative rather than an adversarial process, even when client agencies have different views of the law.  Although the request for an opinion may come from one or more agencies, OLC may "solicit the views of other agencies not directly involved in the opinion request that have subject-matter expertise or a special interest in the question presented."  Best Practices Mem. 3 [JA 300].  And OLC explicitly disclaims any rules of adversary presentation, declaring its "obligation . . . to provide its view of the correct answer on the law, taking into account all reasonable counterarguments, whether provided by an agency or not."  *Id.* at 4 [JA 301].  Similarly, "not every communication between OLC and the interested agencies is shared with

18

every other interested agency." Stip. ¶ 17 [JA 295]. These inner workings of the Executive Branch are not naturally described as the "adjudication of cases."

OLC opinions resolving interagency disputes are not, in any event, "final opinions" in the relevant sense. They are no more final than any other OLC opinion, as in each case it remains for the requesting agency or agencies to make their own determinations about how to proceed with their own operations. The distinction is not between law and policy, but rather between concrete direction to agency subordinates or members of the public, which would be final decisions, and advice to agency heads regarding the legal landscape in which they make such decisions.

As explained out in our opening brief—contrary to plaintiff's contention that the government had not contested that OLC opinions resolving interagency disputes were "final opinions," Br. 18—the Supreme Court has held that "'final opinions' . . . not only invariably explain agency action already taken or an agency decision already made, but also constitute 'final dispositions' of matters by an agency," *Sears*, 421 U.S. at 153-54, *quoted in* Gov't Opening Br. 26. OLC opinions do not satisfy that standard, as they are inputs to an agency's disposition of a matter rather

19

than an explanation of an agency decision that has already been made.

Plaintiff provides no response to this reasoning.

This logic applies in all cases, but the preservation of agency discretion is particularly obvious in one of the examples on which plaintiff relies, in which OLC advised that the Environmental Protection Agency had authority to assess civil penalties against federal agencies. *See* Administrative Assessment of Civil Penalties Against Federal Agencies Under the Clean Air Act, 21 Op. O.L.C. 109 (1997) [JA 481], *cited in* Pl.'s Br. 18 n.3. Nothing in the Opinion compelled any agency to take any action. Instead, the Opinion confirmed that the Environmental Protection Agency had discretion in appropriate cases to assess such penalties. In this respect, the Opinion closely resembles the Opinion held to be deliberative in *Electronic Frontier Foundation*, which held that the FBI was entitled, but not required, to take certain actions. Plaintiff's own example thus underscores plaintiff's apparent view, which plaintiff neither disclaims nor defends, that *Electronic Frontier Foundation* would have come out the other way if a different agency had disagreed with the FBI and then OLC had provided the exact same Opinion. *See* Gov't Opening Br. 16-17.

20

### 3.    OLC opinions relating to agency adjudications are not subject to mandatory disclosure.

Plaintiff likewise provides no sound basis for distinguishing OLC opinions issued in the context of agency adjudications from any other opinions.  As noted, each OLC opinion is issued when an agency has a concrete policy determination to make and requests legal analysis in formulating its decision.  The client agency's ultimate implementation of the policy through an adjudication rather than some other category of agency action has no evident bearing on the role that the OLC opinion plays in the formulation of policy.  If OLC provides the agency with legal advice in the midst of an adjudication, that plainly is not the final decision in the underlying adjudication.  As the district court explained in the context of plaintiff's example of an inquiry about whether a child is entitled to benefits, "there is no allegation in the amended complaint that any particular regulatory or statutory provision actually bestows upon OLC the authority to adjudicate the underlying dispute, let alone issue a final opinion concerning whether a particular child is or is not entitled to benefits."  Second MTD Op. 32 [JA 268].

Plaintiff's discussion of the adjudication of private rights is relevant only insofar as it recognizes the types of adjudications to which the FOIA, located within the Administrative Procedure Act, refers. When Congress referred, in the reading-room provision, to "final opinions . . . made in the adjudication of cases," 5 U.S.C. § 552(a)(2)(A), it was referring to opinions issued by the agencies charged with conducting adjudications under the Administrative Procedure Act to resolve disputes regarding regulated entities or claimants to federal benefits. Those are "final opinions" because they resolve issues before the agency and are not subject to any further review within the agency. OLC opinions, by contrast, are merely inputs to the adjudicating agency's resolution of issues raised by one or more private parties before it.

OLC bears no resemblance to an "appellate tribunal," Br. 32, when agencies consult OLC for legal advice in the course of resolving matters before them. No entity appeals an initial decision to OLC, and OLC does not engage in an adversarial or adjudicative process when an agency seeks OLC's advice. Instead, OLC acts as a classic legal adviser, providing its view of the law for the agency to apply in carrying out its own responsibilities. The context of an agency adjudication that does not

22

otherwise involve OLC changes nothing about this Court's determination in *Electronic Frontier Foundation* that the sense in which OLC opinions are binding is insufficient to render them final for purposes of the FOIA. Plaintiff's efforts to distinguish an "adjudication" from a "deliberation," Br. 36, are in vain: an agency can deliberate about how to resolve an adjudication, and obtaining legal advice constitutes part of those deliberations.

> **4.    OLC opinions are not subject to mandatory disclosure based on the degree to which they constrain an agency's discretion.**

Plaintiff fundamentally misunderstands the relevant inquiry when it insists that legal opinions cease being deliberative "where a legal opinion effectively establishes an agency's policy or its interpretations of law." Br. 46; *see also* Br. 39 (suggesting that opinions setting out nondiscretionary obligations differ from other opinions). This Court squarely rejected that view in *Murphy*, when it held that the Army General Counsel's legal opinion was subject to Exemption 5 even though "the General Counsel has the duty of 'determining the legal position of the Army on any legal question or legal procedure.'" *Murphy*, 613 F.2d at 1154 n.9 (quoting U.S. Dep't of the Army, Reg. 10-5, *Organization and Functions* para. 2-10 (Apr. 1,

1975)).  The Court deemed it "immaterial" whether the particular opinion at issue in that case regarding the legality of a contract had caused work to cease on a particular project, because "legally the General Counsel has no authority to make a final determination with respect to the continuation of the project."  *Id.*

In *Electronic Frontier Foundation*, this Court cited *Murphy* as an example of the type of decision that controls the analysis of OLC opinions, namely, a "decision[] holding that the deliberative process privilege *does* cover legal memoranda that concern the *advisability* of a particular policy, but do not authoritatively state or determine the agency's policy." *Electronic Frontier Found.*, 739 F.3d at 8 (emphasis in original); *see id.* at 9 (discussing *Murphy*).  Similarly, the Court explained that legal advice by the Legal Adviser to the Secretary of State had been held to be deliberative because "the 'flow of advisory material is exactly opposite of the paradigm of "final opinions," which typically flow from a superior with policy-making authority to a subordinate who carries out the policy.'"  *Id.* at 9 (quoting *Brinton*, 636 F.2d at 605).

Even if legal advice might significantly constrain an agency's options, it remains legal advice rather than a final opinion.  The agency must then

take its own action, which will constitute a final decision and may be subject to a requirement that the agency explain the basis for its action or inaction. But OLC's legal advice is not itself that final opinion. As noted above, if an agency's general counsel provides legal advice that forecloses a course of action in which the agency would otherwise have engaged, that would not plausibly be described as anything other than predecisional advice; indeed, that was the holding of *Murphy*. OLC opinions are no different in this regard.

### C.    Plaintiff's policy arguments are mistaken.

Plaintiff's arguments about the practical effects of an order requiring the publication of OLC's legal advice highlight the absence of any material distinction between the categories identified here and any other opinion and misunderstand the relevant interests at stake.

Plaintiff asserts a general interest in published OLC opinions, not any interest specific to the categories at issue here. Although it asserts that the opinions at issue here are "especially likely to concern" certain topics, Br. 59, it provides no explanation of why that would be the case. All OLC opinions involve legal questions to which federal agencies need answers to carry out their work.

25

Plaintiff's suggestion that keeping OLC opinions secret allows agencies to shield their own decisionmaking reflects plaintiff's more general misunderstanding of OLC's role in the administrative process. Agencies frequently have an obligation to justify their actions publicly. That obligation can arise from a number of places, including the Administrative Procedure Act and the reading-room provisions of the FOIA. The justifications agencies provide for their decisions also provide the basis for judicial review when their orders are challenged. And agencies frequently justify their actions in response to inquiries from the public, the press, or Congress. In each case, while OLC may play an important role in providing legal advice that helps agencies to make the best decisions possible, ultimately it is the agency that must stand behind its actions and its stated justifications for those actions. In that respect, OLC's advice is no different from an agency general counsel's advice that might inform agency decisionmaking but does not itself qualify as a final agency decision that must be disclosed to the public.

On the other side of the ledger, plaintiff has no answer to the concern that making formal OLC opinions public will chill deliberation. Plaintiff protests that many other forms of OLC advice can remain confidential even

26

if their theory in this case is accepted, but the protection of a privilege in some circumstances provides no justification for abridging it in others. Formal OLC opinions involve some of the more difficult and high-profile questions, often arising from disagreements or uncertainty at high levels of the Executive Branch, where the need for candid legal advice without the fear of disclosure is at its apex.  They are subject to the deliberative process and attorney-client privileges, and not to mandatory disclosure under the FOIA.

## CONCLUSION

For the foregoing reasons and those stated in our opening brief, the judgment of the district court should be reversed insofar as it requires the disclosure of OLC opinions resolving interagency disputes, and otherwise affirmed.

Respectfully submitted,

BRETT A. SHUMATE
*Acting Assistant Attorney General*
MICHAEL S. RAAB

*/s/ Daniel Tenny*
DANIEL TENNY
*Attorneys, Appellate Staff*
*Civil Division, Room 7215*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-1838*
*daniel.tenny@usdoj.gov*

FEBRUARY 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 28.1(e)(2)(A) because it contains 5,458 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally spaced typeface.

*/s/ Daniel Tenny*
Daniel Tenny