ORAL ARGUMENT SCHEDULED APRIL 11, 2025

**Nos. 24-5163, 24-5170**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

Campaign for Accountability,

*Plaintiff–Appellee / Cross-Appellant*,

v.

U.S. Department of Justice,

*Defendant–Appellant / Cross-Appellee*.

On appeal from the United States District Court for the
District of Columbia — No. 1:16-cv-01068 (Cobb, J.)

## REPLY BRIEF FOR APPELLEE / CROSS-APPELLANT

Alex Abdo
Anna Diakun
Jackson Busch
Jameel Jaffer
Knight First Amendment Institute at
    Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
alex.abdo@knightcolumbia.org

*Counsel for Plaintiff–Appellee / Cross-Appellant*

**Table of Contents**

Table of Authorities ...................................................................................ii

Glossary.....................................................................................................iv

Summary of Argument................................................................................ 1

Argument.....................................................................................................4

    I.     *EFF* does not exempt the OLC opinions at issue from FOIA. .................4

         A.     *EFF* does not apply to § 552(a)(2)(A)..............................................4

         B.     Even with respect to § 552(a)(2)(B), *EFF* does not exempt the opinions at issue here, because those opinions speak with authority on agency law or policy. ...................................................6

    II.    The reading-room provision requires the OLC to proactively disclose opinions in the three categories at issue....................................16

         A.     Opinions resolving interagency disputes......................................16

         B.     Opinions issued in the adjudication of private rights. ...................16

         C.     Opinions interpreting non-discretionary legal obligations. ...........21

    III.   Disclosure of the opinions CfA seeks would serve the rule of law. ........24

Conclusion.................................................................................................26

Certificate of Compliance .........................................................................27

Certificate of Service.................................................................................28

## Table of Authorities

**Cases**

*Brinton v. Dep't of State*, 636 F.2d 600 (D.C. Cir. 1980) .........................7, 9, 11, 12

*Bryant v. Gates*, 532 F.3d 888 (D.C. Cir. 2008) ......................................................15

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.* (*CREW II*),
    922 F.3d 480 (D.C. Cir. 2019) .................................................................2, 6, 7

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir.
    1980) ..................................................................................9, 15, 17, 18, 25, 26

*Electronic Frontier Foundation v. U.S. Department of Justice* (*EFF*),
    739 F.3d 1 (D.C. Cir. 2014) ....................3, 4, 5, 6, 7, 8, 9, 13, 14, 17, 19, 23, 24

*Murphy v. Dep't of Army*, 613 F.2d 1151 (D.C. Cir. 1979). ...............7, 9, 11, 12, 23

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) ..............................5, 7, 15, 24

*Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865 (D.C. Cir.
    2010) ...............................................................................................................15

*Schlefer v. United States*, 702 F.2d 233 (D.C. Cir. 1983) ...1, 2, 9, 10, 11, 15, 17, 22

*Tax Analysts v. IRS* (*Tax Analysts I*), 117 F.3d 607 (D.C. Cir. 1997)....9, 10, 15, 17,
    22, 25

*Tax Analysts v. IRS* (*Tax Analysts II*), 294 F.3d 71 (D.C. Cir. 2002) ..1, 8, 9, 10, 12,
    15, 17, 19, 22

*United States v. Hall*, 370 F.3d 1204 (D.C. Cir. 2004) ..........................................15

**Statutes**

28 C.F.R. § 0.25(a) ..................................................................................................20

28 U.S.C. § 512 .......................................................................................................20

5 U.S.C. § 552(a)(2) ................................................................................................16

5 U.S.C. § 552(a)(2)(A) ...................................................................4, 5, 20

5 U.S.C. § 552(a)(2)(B)................................................................4, 5, 6, 21

**Other Authorities**

*Administrative Assessment of Civil Penalties Against Federal
    Agencies Under the Clean Air Act*, 21 Op. O.L.C. 109 (1997)..........................12

*Application of the Statutory Pay Cap on Administratively Determined
    Pay in 5 U.S.C. § 5373 to the National Science Foundation*, 47 Op.
    O.L.C. __ (2023) .......................................................................22, 23

*Responsibility of Agencies to Pay Attorney's Fee Awards Under the
    Equal Access to Justice Act*, 31 Op. O.L.C. 229 (2007) ..............................21, 23

*Whether the Defense of Marriage Act Precludes the Nonbiological
    Child of a Member of a Vermont Civil Union from Qualifying for
    Child's Insurance Benefits Under the Social Security Act*, 31 Op.
    O.L.C. 243 (2007) ..........................................................................19

*Whether the United States Postal Service Bears Responsibility for the
    Cost of Certain Civil Service Retirement Benefits Paid to Its
    Employees*, 48 Op. O.L.C. __ (2024)..........................................................22

**Glossary**

Pursuant to D.C. Circuit Rule 28(a)(3), the following is a glossary of acronyms and abbreviations used in this brief.

| | |
|---|---|
| CfA | Campaign for Accountability |
| CREW | Citizens for Responsibility & Ethics in Washington |
| DOD | Department of Defense |
| DOL | Department of Labor |
| EFF | Electronic Frontier Foundation |
| EPA | Environmental Protection Agency |
| FBI | Federal Bureau of Investigation |
| FOIA | Freedom of Information Act |
| IRS | Internal Revenue Service |
| JA | Joint Appendix |
| NSF | National Science Foundation |
| OLC | Office of Legal Counsel |

## Summary of Argument

If there is a rule about the application of the Freedom of Information Act ("FOIA") to legal opinions, it is this: context matters. As this Court has held, a legal opinion is sometimes deliberative, and at other times it has the force and effect of law and must be disclosed under FOIA. In distinguishing between the two, this Court has considered "the reality of the decisionmaking process in question," *Schlefer v. United States*, 702 F.2d 233, 238 (D.C. Cir. 1983), asking whether the opinion was mere advice in a deliberative process or, instead, an interpretation of law meant to be relied upon by the agency in discharging its duties. This inquiry "is not amenable to a categorical formula." *Tax Analysts v. IRS* (*Tax Analysts II*), 294 F.3d 71, 82 (D.C. Cir. 2002).

And yet the government's argument here is entirely categorical. It says that every single Office of Legal Counsel ("OLC") opinion is deliberative, irrespective of the circumstances of its issuance, and irrespective of its role in any actual deliberative process. As a conceptual matter, it could justify that absolutist position only if it argued that (1) the OLC as an office is unlike every other counsel's office in the federal government in a way that distinguished this Court's cases holding that the opinions of those offices are sometimes working law, or (2) the OLC's opinions are always advisory in nature.

1

But neither of those positions is remotely defensible. The government specifically disavows the first argument, Gov't Resp. 8–9, but even if it pursued it, the argument cannot be reconciled with what actually makes the OLC unique. Its opinions are, if anything, only more likely than most agency lawyer opinions to qualify as working law, given the centuries-old role of the Attorney General (and, as now delegated, the OLC) in announcing the law of the executive branch. The second argument, for its part, is demonstrably untrue. Every OLC opinion in the record demonstrates that the agency's opinions—in the three categories at issue—look and function like authoritative judicial opinions, not mere advice.

It is because context matters that this Court, in *CREW II*, pointed to this very litigation as the sort that FOIA requesters should pursue in attempting to demonstrate that specific categories of OLC opinions are not deliberative because they speak with authority on agency law and policy. Campaign for Accountability ("CfA") has demonstrated just that with respect to the three categories of opinions at issue. These opinions are not advisory inputs into a deliberative process; they are conclusive legal opinions "written and received in circumstances that establish them" as the law and policy of the agencies that solicit them. *See Schlefer*, 702 F.2d at 237.

Below, CfA responds in detail to the government's many flawed arguments. But at a higher level, one simple way to understand the flaw that runs through most of the government's arguments is to ask this question: what specific deliberations

2

would be revealed if the opinions CfA seeks were disclosed? The government's brief does not identify any, and this is because the answer is "none." When two agencies submit their dispute to the OLC, for example, they have already concluded their deliberations, arrived at two separate policies, and identified the conflict between those policies for resolution by a higher authority. The OLC cannot credibly claim that the policies underlying the dispute are deliberative—because they are established policies, not deliberations. Nor can it claim that the OLC's resolution of the dispute is deliberative, because the OLC opinion conclusively resolves the dispute. These OLC opinions do not "advise," "deliberate," or offer "tentative conclusions." They arbitrate. This is likewise the case for OLC opinions that are issued in the adjudication of private rights and that interpret non-discretionary legal obligations. These opinions do not offer advisory input into agency deliberations; they directly establish the law of the agency.

This is all in contrast to the opinion at issue in *EFF*. That opinion was solicited during an actual deliberation by the FBI over how to respond to an internal investigation into its past use of "exigent letters." The OLC's opinion apparently informed those deliberations, but it did not end them, and it did not decide agency policy. In short, the opinion had no resemblance to the ones here, aside from the fact that it was also issued by the OLC. But as explained above and below, that similarity does not establish that the opinions are deliberative.

## Argument

### I. *EFF* does not exempt the OLC opinions at issue from FOIA.

CfA's opening brief explained that *Electronic Frontier Foundation v. U.S. Department of Justice* (*EFF*), 739 F.3d 1 (D.C. Cir. 2014), does not exempt the opinions at issue from FOIA for two reasons. First, and as recognized by both then-Judge Jackson and Judge Cobb, *EFF* simply does not apply to CfA's claims under § 552(a)(2)(A). Second, even with respect to § 552(a)(2)(B), *EFF* "plainly leaves open the possibility" that other OLC opinions "speak with authority" on agency law and policy such that they constitute "statements of policy and interpretations" that must be disclosed. Second MTD Op. 21 [JA 257]; 5 U.S.C. § 552(a)(2)(B).

The government hardly engages with the first argument, and its principal response to the second—that *EFF* already decides this case—is irreconcilable with *EFF*, *CREW II*, and decades of this Court's precedent holding that whether legal opinions are working law turns on the specifics of the opinions' issuance and substance.

### A. *EFF* does not apply to § 552(a)(2)(A).

As CfA's opening brief explained, *EFF* does not apply to CfA's claims under § 552(a)(2)(A) because that subsection requires the disclosure of "final opinions . . . made in the adjudication of cases," without regard to the considerations at the core of the *EFF* decision—namely, whether the opinion at issue affected "policy" or was

"adopted." CfA Br. 44–45. Those considerations are relevant to § 552(a)(2)(B), because that provision applies to "statements of *policy . . .* which have been *adopted*." But as then-Judge Jackson and Judge Cobb both properly recognized, the text of subsection (a)(2)(A) does not condition disclosure on these considerations. Second MTD Op. 28 [JA 264]; MSJ Op. 14–15 [JA 615–16].

The government's sole argument in response appears to be that *EFF* applies to § 552(a)(2)(A) because the deliberative process privilege trumps that subsection. *See* Gov't Resp. 4–5. This is wrong. As the Supreme Court has held, if a record is a "final opinion[]" under § 552(a)(2)(A), then it "can never" be withheld under Exemption 5. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153–54 (1975). That makes sense. Final opinions issued in an adjudication are not deliberative in any relevant sense; they are conclusive resolutions of some aspect of an adjudication. The key question, then, is whether the OLC opinions that CfA seeks under § 552(a)(2)(A) fall within the plain text of that provision. And on that question, *EFF*'s discussion of policymaking authority and adoption is inapt, because, again, *EFF* did not address § 552(a)(2)(A) and those considerations are unique to § 552(a)(2)(B).

**B.** **Even with respect to § 552(a)(2)(B),** *EFF* **does not exempt the opinions at issue here, because those opinions speak with authority on agency law or policy.**

CfA's opening brief also explained that, even with respect to § 552(a)(2)(B), *EFF* does not exempt the OLC opinions at issue here because they speak with authority on agency law or policy. *See* CfA Br. 46–50.

**1.** The government's principal response is that *EFF* categorically exempts all OLC opinions from FOIA. *See, e.g.*, Gov't Resp. 6–8. This argument conflicts with *EFF*, *CREW II*, and decades of this Court's precedent, all of which make clear that the question of whether a legal opinion is working law turns on context.

Neither the holding of *EFF* nor its logic categorically exempts all OLC opinions from FOIA. *See* CfA Br. 46–47. As then-Judge Jackson observed, *EFF* "plainly leaves open the possibility" that other OLC opinions must be disclosed. Second MTD Op. 21 [JA 257]. *EFF* held that the opinion at issue was not working law because it did not "speak with authority" on agency policy. *EFF,* 739 F.3d at 9. That conclusion followed a detailed accounting of the context in which the FBI sought the opinion, and the nature of the resulting opinion, which the Court summarized in this way: "The OLC Opinion does not provide an authoritative statement of the FBI's policy. It merely examines policy options available to the FBI." *Id.* at 10. But as this Court later recognized in *CREW II*, its earlier decision left open the possibility that other categories of OLC opinions do in fact speak with

6

authority on agency policy. *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.* (*CREW II*), 922 F.3d 480, 489 (D.C. Cir. 2019). Indeed, the Court pointed to this very litigation as the kind that could go forward, notwithstanding *EFF*. *Id.*

This interpretation of *EFF* is consistent with—and indeed the only way to reconcile—this Court's caselaw. If there is a rule that emerges from the many cases in which this Court has addressed whether a legal opinion must be disclosed under FOIA, it is that context matters. This Court has considered many different factors in assessing that context, including the five set out in CfA's opening brief. *See* CfA Br. 53–54. Ultimately, the question is whether the opinions have "the force and effect of law," *Sears*, 421 U.S. at 153 (citation omitted), or (as this Court phrased it) "speak with authority" on agency law or policy, *EFF*, 739 F.3d at 9. In some circumstances, they do. *See* CfA Br. 51–53 (discussing this Court's precedent). And in others, they do not. *See, e.g.*, *Brinton v. Dep't of State*, 636 F.2d 600, 605 (D.C. Cir. 1980); *Murphy v. Dep't of Army*, 613 F.2d 1151, 1154 (D.C. Cir. 1979).

The government repeatedly mischaracterizes this consideration of context as an effort to "relitigate" or "repudiate" *EFF*. *See, e.g.*, Gov't Resp. 1, 5, 13–14. In *EFF*, the Court rejected the claim that OLC opinions are working law merely by virtue of their binding nature. *See* 739 F.3d at 9. The government claims that CfA makes precisely that argument. It does not. CfA points to the binding nature of OLC opinions because, even though not *sufficient* under *EFF*, it is surely *relevant* to the

7

analysis. What distinguishes the opinions that CfA seeks is that they are not *just* binding; given the circumstances of their solicitation and issuance, they also speak with authority on agency law and policy.[1]

The government also takes issue with the possibility that the same opinion might be working law or not depending on context. *See* Gov't Resp. 20. But this Court itself has already acknowledged this possibility. In *Tax Analysts II*, for example, the Court held that legal memos that represent "the final legal position" of the Office of Chief Counsel are working law when they travel "horizontally" to field personnel, but are deliberative when they travel "upward" as "adv[ice]" to the Commissioner of Internal Revenue. 294 F.3d at 81. As the Court went on to explain, whether an opinion is deliberative or represents considered legal conclusions "can turn on the subject matter of the [memo], on its recipient, on its place in the decisionmaking process, and even on its tone." *Id.* at 82.

More fundamentally, consideration of context is unavoidable. Absent it, the only two paths available to the Court would be to hold that all legal opinions are

---

[1] The government also relies on the fact that CfA dropped its claim that OLC opinions issued to independent agencies are, as a category, distinct from the opinion in *EFF*. Gov't Resp. 11. Its argument is perplexing. CfA's decision turned on the fact (which became evident during district court proceedings) that all agencies—and not just independent ones—agree to be bound by OLC opinions. Under *EFF*, the binding nature of an opinion is insufficient on its own to establish that the opinion is working law, and so CfA acknowledged that this category of opinions is not distinguishable from the one in *EFF* on that basis.

8

working law or that none are. This Court has already rejected that false dichotomy, and it should do so again.

**2.** The government claims that the OLC opinions at issue here are similar to the documents held to be deliberative in *EFF*, *Murphy*, and *Brinton*, *see* Gov't Resp. 9, 23–25, but the record makes clear that these opinions are analogous to those considered in *Coastal States*, *Tax Analysts I*, *Tax Analysts II*, and *Schlefer*.

 When agencies solicit the legal opinions at issue, they are not seeking deliberative advice. Instead, they are seeking a definitive resolution: of a dispute between multiple agencies' already settled policies, of the law that applies to an ongoing agency adjudication, or of the correct understanding of an agency's legal obligation to act in a manner it has no discretion to ignore. The rulings are not advisory inputs into deliberations; they are solicited to, and do in fact, speak with authority on the law and policy of the agencies requesting them.

For instance, when an agency is adjudicating private rights but asks the OLC for an opinion setting out the law that applies to the adjudication, that law by necessity becomes the working law of the agency. *See, e.g.*, CfA Br. 37–38 (example OLC opinions). Indeed, opinions in this category are materially indistinguishable from the ones in *Coastal States*, *Tax Analysts I*, *Tax Analysts II*, and *Schlefer*. In each of those cases, agency adjudicators asked for legal opinions based on either real or hypothetical facts tied to an ongoing agency adjudication of private rights. The

relevant counsel then issued opinions, which the agency adjudicators applied as the law of the agency. *See* CfA Br. 51–54 (discussing these cases). And this Court held in each of those cases that the legal opinions must be disclosed because they were "written and received in circumstances that establish them as definitive rulings on the legal questions they decide." *Schlefer*, 702 F.2d at 237.

Notably, the Court in those cases held that the legal opinions must be disclosed even though they flowed from government lawyers to those with programmatic decision-making authority. The government argued in *Tax Analysts II*, similarly to here, *see* Gov't Resp. 7, 9, 21, that the opinions were deliberative because they were "issued to program officers who make the final decisions about their programs." *Tax Analysts II*, 294 F.3d at 81. But this Court rejected that argument, observing that it is "not necessary that the TAs reflect the final *programmatic* decisions of the program officers who request them." *Id.* The opinions, the Court said, do not "travel upward" as part of a "deliberative process"; instead, they travel "horizontally" to field officers who must apply the legal conclusions as their working law. *Id.*; s*ee also Schlefer*, 702 F.2d at 238 (requesting officials "retain[ed] initial decisionmaking authority"); *Tax Analysts v. IRS* (*Tax Analysts I*), 117 F.3d 607, 617 (D.C. Cir. 1997). With respect to the categories at issue, the same is true.

For similar reasons, the OLC opinions CfA seeks are nothing like the records at issue in *Murphy* and *Brinton*. *Murphy* concerned legal advice provided by agency

lawyers to the Assistant Secretary of the Army for Civil Works, who was deliberating over whether to approve a contract with Kentucky. *Murphy*, 613 F.2d at 1153. There was an ongoing deliberation—whether to approve the contract—and the decisionmaker sought legal advice on "the strategy to be pursued in view of the controversy surrounding" the agreement. *See id.* at 1154; *see also id.* at 1153 n.6. The subsequent memo traveled upward, it provided quintessential advice from an attorney to a client, and it was not sought to—and did not in fact—end the agency's deliberations. Unsurprisingly, this Court held that the legal advice was deliberative. *Id.* The facts in *Brinton* are also far afield. There, the requester sought State Department legal opinions concerning Israel, the West Bank, Gaza, and the Golan Heights. *Brinton*, 636 F.2d at 602. This Court held that the opinions were deliberative, after noting that they "bear no indicia of finality," were issued by an office with "no authority to make final decisions concerning United States policy in the Middle East," and flowed upward from an advisor to a decisionmaker who had "discretion to follow the opinions or not." *Id.* at 605.

Along every metric considered in *Murphy* and *Brinton*, the categories of OLC opinions in this case are different. They are not sought as advisory inputs into a deliberation, but instead to arbitrate between conflicting policy positions or to conclusively end deliberation over agency law. *See Schlefer*, 702 F.2d at 237. They bear all the indicia of finality. They are issued by an office with the authority, based

11

on the context of the request, to establish legal policy. And they flow downward (or "horizontally," *Tax Analysts II*, 294 F.3d at 81) in that the recipients have no discretion to ignore the opinions' legal conclusions and policy consequences.

This is easiest to see by example. The government discusses only one of the many OLC opinions in the record, *see* Gov't Resp. 20, but even that one contrasts sharply with the opinions in *Murphy* and *Brinton*. The opinion—*Administrative Assessment of Civil Penalties Against Federal Agencies Under the Clean Air Act*, 21 Op. O.L.C. 109 (1997) [JA 481–90]—concerned a dispute between the Environmental Protection Agency ("EPA") and the Department of Defense ("DOD") over whether the EPA could assess civil penalties against other agencies for violating the Clean Air Act. Each agency in the dispute had a settled policy: the EPA's legal policy was that it had this authority, *see id.* at 110 [JA 482] ("EPA presents a straightforward position that section 113(d) authorizes EPA to assess administrative penalties against federal agencies."), and the DOD's legal policy was the opposite, *see id.* at 111 [JA 483]. Neither agency was engaged in a deliberation, but because their settled policies conflicted, they turned to the OLC, as the executive branch arbitrator of such disputes. The OLC then resolved the dispute through an opinion bearing all the indicia of finality that any judicial opinion has—"we conclude that the Act does provide EPA such authority." *Id.* at 109 [JA 481]; *see also Tax Analysts II*, 294 F.3d 81 (noting that the memos ordered released "use such

language as . . . 'We conclude'"). And that opinion flowed downward to agencies that lacked the discretion to ignore the OLC's resolution of the dispute.

To be sure, as the government notes, Gov't Resp. 20, the agencies that received the opinion could respond by initiating deliberations over what to do next. But the same is true of the parties to any dispute: they always have a downstream choice to make. As a result, treating opinions as deliberative whenever they leave room for future decision-making would allow the deliberative process privilege to swallow all of FOIA. That is why this Court has rejected that interpretation. *See* CfA Br. 19–20 (collecting cases). Of course, deliberations over downstream decisions may be protected from disclosure once those deliberations begin. But the deliberative process privilege applies only to actual, not hypothetical, deliberations, and only when the document at issue is solicited to inform those deliberations, rather than to resolve them.

The opinion in *EFF* was different on this score. The FBI did not ask for a legal opinion that would establish the agency's legal policy. Instead, it asked for legal advice to consider in drafting its response to the agency's inspector general, and that legal advice was a genuinely advisory input into a specific and ongoing deliberation. *See EFF*, 739 F.3d at 5.

The only thing that plausibly distinguishes the OLC opinions at issue here from legal opinions recognized to be working law is the fact that the OLC sits outside

13

of (most of) the agencies soliciting its opinions. *See* CfA Br. 54–55. To its credit, the government expressly disavows reliance on this purported distinction. Gov't Resp. 8–9. Instead, it argues that OLC opinions are distinct in that they allegedly "flow to policymakers who then set policy." Gov't Resp. 9. But as explained above, in the three contexts relevant here, the OLC's opinions do not flow upward to a policymaker, but rather flow downward (or horizontally) to agency officials seeking an authoritative resolution of a question of legal policy. If those officials had discretion in these three contexts to ignore the OLC's legal conclusions, and if they did in fact routinely do so, then the OLC's opinions might be thought of as advisory. But the government does not dispute the fact that the OLC's interpretive authority supersedes the interpretive authority of agency officials, including even agency heads. *See* CfA Br. 54. Of course, under *EFF*, superior interpretive authority is not itself sufficient; even authoritative legal opinions might be sought as a mere input into an ongoing deliberation. The categories of opinions here, however, are not.

The government also disputes the significance of the fact that the OLC opinions at issue here are adopted "ex ante," arguing that this logic would require the disclosure of *all* OLC opinions, because all OLC opinions are "controlling, authoritative, and binding." Gov't Resp. 9–10. But again, this misses the point. The three categories of opinions are adopted ex ante in that they are solicited specifically to establish agency working law. Though the Court did not use the phrase ex ante

adoption in *Coastal States*, *Tax Analysts I*, *Tax Analysts II*, or *Schlefer*, the basis for those decisions was one and the same. The Court did not look for some separate act of adoption. It was enough that the legal documents at issue were "written and received in circumstances that establish them as definitive rulings on the legal questions they decide." *Schlefer*, 702 F.2d at 237. So too here.[2]

**3.** Finally, the government half-heartedly reprises several arguments that the district court appropriately rejected.

The government claims that the "working law" doctrine applies only to "policies and rules that create or determine substantive rights and liabilities," Gov't Resp. 11–12, but that is not true. In *Sears*, the Court described the doctrine as applying to "the reasons which did supply the basis for an agency policy actually adopted." 421 U.S. at 152. And in *Public Citizen*, this Court applied the doctrine to an agency's legislative and budgetary clearance policies. *Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865, 867, 875 (D.C. Cir. 2010). This broader understanding makes sense, because Congress was concerned in FOIA with

---

[2] The government has forfeited its argument that opinions resolving interagency disputes are protected by the attorney–client privilege. *See* CfA Br. 55 n.9. And its perfunctory reference in its response brief, *see* Gov't Resp. 8, effectively forfeits the argument with respect to the other categories of opinions. *See United States v. Hall*, 370 F.3d 1204, 1208 n.4 (D.C. Cir. 2004) ("This one sentence, unaccompanied by argument or any citation to authority, does not preserve the issue for decision."); *accord Bryant v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008). In any event, the argument fails on the merits. *See* CfA Br. 57–58.

exposing governmental policy writ large to public scrutiny, not only those policies affecting "substantive rights and liabilities," a phrase which appears nowhere in FOIA. *See* CfA Br. 24–25.

The government also argues that any disclosure obligation under § 552(a)(2) would fall upon the agencies soliciting the OLC's opinions rather than the OLC, Gov't Resp. 15, but it does not address the two problems with this argument identified in CfA's opening brief: (1) the OLC's opinions are the working law of the recipient agencies upon the moment of their issuance, and (2) the OLC adopts its own opinions. CfA Br. 30–31. For these reasons, even if only agencies that adopt a record as their working law must disclose it, the OLC bears that burden here.

## II.    The reading-room provision requires the OLC to proactively disclose opinions in the three categories at issue.

### A.    Opinions resolving interagency disputes.

CfA does not address the government's arguments about the application of § 552(a)(2) to opinions resolving interagency disputes because those opinions are the subject of the government's appeal. CfA respectfully directs the Court to its opening brief. *See* CfA Br. 15–31.

### B.    Opinions issued in the adjudication of private rights.

As explained above and in CfA's opening brief, CfA Br. 34–35, OLC opinions issued in the course of an agency's adjudication of private rights are indistinguishable from the legal opinions that this Court ordered disclosed in *Coastal*

16

*States*, *Tax Analysts I*, *Tax Analysts II*, and *Schlefer*. In this case and in those, agency officials were adjudicating the rights of private individuals; they turned to government lawyers for an authoritative statement of the law that applied; and they then applied that law to the facts at hand. This Court correctly held that legal opinions issued in this context are not deliberative, because they "reflect the law the government is actually applying in its dealings with the . . . public." *Tax Analysts I*, 117 F.3d at 618. There is simply no principled distinction between those past legal opinions and the ones the OLC issues in the course of agency adjudications of private rights. That alone should resolve CfA's cross-appeal with respect to this category of opinions.

The government maintains that these opinions are similar to the one in *EFF*, but its arguments are incorrect.

First, the government is incorrect that the OLC's role when issuing this subset of opinions is that of a "classic legal adviser," whose opinions are "merely inputs to the adjudicating agency's resolution of issues." Gov't Resp. 22. If this were true, then the same would have been true in *Coastal States* and the related cases. Those opinions, like the ones in this category, were (in a purely formalistic sense) "inputs" into an adjudication, but the Court rejected the claim that the opinions were deliberative, because they conclusively resolved the law that applied to the adjudication of private rights. *See, e.g.*, *Coastal States Gas Corp. v. Dep't of Energy*,

17

617 F.2d 854, 868 (D.C. Cir. 1980) ("Characterizing these documents as 'predecisional' simply because they play into an ongoing audit process would be a serious warping of the meaning of the word.").

The same is true here. As the examples in the record show, these opinions definitively resolve the law applicable to the underlying adjudications, and they use mandatory language to do so. *See* CfA Br. 33–34 & n.7. They do not provide "legal advice," Gov't Resp. 21, and unsurprisingly the government has not pointed to any examples from the opinions in this category of language that reflects "the give-and-take of the decisionmaking process." *Coastal States*, 617 F.2d at 866.

Moreover, the relationship between the OLC and the agencies that solicit opinions in this category is not an advisory one. When an agency asks the OLC to decide a legal issue relevant to an adjudication, it effectively cedes to the OLC the decision-making authority over that aspect of the adjudication, and the agency then applies the resulting legal decision. For example, when the Social Security Administration sought an opinion regarding its adjudication of the insurance benefits to which a specific boy was entitled, CfA Br. 33–34, the question presented was whether the Defense of Marriage Act disqualified the boy from benefits under the Social Security Act. The OLC's answer was no, which dictated the law the agency applied to the adjudication: If the child was otherwise eligible for benefits, he remained eligible. *See Whether the Defense of Marriage Act Precludes the*

*Nonbiological Child of a Member of a Vermont Civil Union from Qualifying for Child's Insurance Benefits Under the Social Security Act*, 31 Op. O.L.C. 243, 243–44 (2007) [JA 142–43].

This dynamic is fundamentally different from that in *EFF*.

Critical to the Court's analysis in *EFF* was that the opinion "merely examine[d] policy options," and thus "d[id] not provide an authoritative statement of the FBI's policy." *EFF*, 739 F.3d at 10. Because of the nature and posture of the request, "[t]he FBI was free to decline to adopt the investigative tactics deemed legally permissible in the OLC Opinion," *id.*, and it in fact did so, *id.* at 12 (explaining that the FBI General Counsel "disavowed reliance on the OLC Opinion"). When asked to weigh in on agency adjudications, though, the OLC is *not* being asked to assess policy options as a mere legal adviser. It is being asked to resolve one aspect of the adjudication, namely, the law that applies.

The government argues—as it did in *Tax Analysts II*, 294 F.3d at 81—that the resulting opinion "plainly is not the final decision in the underlying adjudication." Gov't Resp. 21. But here, as there, it is enough that the opinion dictates the law that the agency applies. It is also irrelevant whether there is a "particular regulatory or statutory provision" granting the OLC the authority "to adjudicate the underlying dispute." *Id.* (quoting Second MTD Op. 32 [JA 268]). In this context, the agency effectively delegates its own authority to the OLC, and in any event, when an agency

19

does so, it does so pursuant to the statute authorizing agencies to "require the opinion of the [OLC] on questions of law arising in the administration of" the agency. 28 U.S.C. § 512; *see* 28 C.F.R. § 0.25(a) (delegating this authority to the OLC).

Second, the government attacks the analogy of the OLC to an appellate tribunal, Gov't Resp. 22–23, but its attack misses the point. The argument isn't that the OLC is identical to an appellate tribunal, but that its opinions share key characteristics with those issued by appellate tribunals—which no one would question are "final opinions . . . made in the adjudication of cases." 5 U.S.C. § 552(a)(2)(A). In this context, the OLC, like an appellate tribunal, receives a question of law from an adjudicative body; it issues an authoritative opinion on that question; the opinion then travels downward to the agency for application in the adjudication; and the agency applies the law as its own. *See* CfA Br. 32–33, 35.

Third, and finally, the government advances a narrow interpretation of the reading-room provision that is unsupported by case law. It suggests, without citation, that § 552(a)(2)(A) applies only to "opinions issued by the agencies charged with conducting adjudications under the Administrative Procedure Act to resolve disputes regarding regulated entities or claimants to federal benefits." Gov't Resp. 22. But the plain text of the statute does not limit disclosure to only those opinions authored by the agency itself. And as CfA has explained, *see* CfA Br. 32–33, because the agencies soliciting these opinions deliberately involve the OLC in their process for

formulating an order, and because the OLC's opinions have the practical effect of disposing of the question of what law applies in the adjudication, the opinions fall within the scope of the provision. Practically, there is no difference between this process and an internal agency process that is bifurcated, in which one agency adjudicator issues a ruling establishing the law that applies and another issues a ruling that applies the law to the facts at hand.

### C.    Opinions interpreting non-discretionary legal obligations.

The government similarly fails to reckon with the context of OLC opinions interpreting agencies' non-discretionary legal obligations. Opinions in this category do not merely limit agencies' policy choices, as the government claims. *See* Gov't Resp. 24–25. Instead, they dictate how an agency must act. They are therefore "statements of policy and interpretations which have been adopted by the agency" and must be disclosed. 5 U.S.C. § 552(a)(2)(B).

In its opening brief, CfA highlighted several OLC opinions that compelled agency action. CfA Br. 39–41. As a direct result of these opinions, an agency was required to pay a six-figure attorney's fee award, *see Responsibility of Agencies to Pay Attorney's Fee Awards Under the Equal Access to Justice Act*, 31 Op. O.L.C. 229, 233, 242 (2007) [hereinafter *Attorney's Fees Op.*] [JA 179, 188]; reduce staffers' salaries below a designated cap, *see Application of the Statutory Pay Cap on Administratively Determined Pay in 5 U.S.C. § 5373 to the National Science*

21

*Foundation*, 47 Op. O.L.C. __, at 2 (2023) [hereinafter *Pay Cap Op.*], https://perma.cc/FS6J-9UVV; and pay retirement benefits to a specific group of beneficiaries, *see Whether the United States Postal Service Bears Responsibility for the Cost of Certain Civil Service Retirement Benefits Paid to Its Employees*, 48 Op. O.L.C. __, at 21 (2024), https://perma.cc/JT3R-597X. These examples are conspicuously absent from the government's briefing.

Instead, the government's principal response appears to be that these opinions only *constrain* agency action, because some agency official ultimately must act to effectuate the OLC's command. Gov't Resp. 24–25. But this view of policymaking has been rejected by this Court again and again. *See Schlefer*, 702 F.2d at 238 (explaining that legal opinions set agency policy even when they flow to officials that maintain ultimate "decisionmaking authority" on behalf of the agency); *accord Tax Analysts I*, 117 F.3d at 617; *Tax Analysts II*, 294 F.3d at 81. When an official with the power to bind prescribes some action, that official is making policy, even if a subordinate must later carry out the directive. That is the OLC's role when it issues these opinions.

The government likens the OLC's function here to an agency's general counsel telling her superiors that the law forbids a particular policy under consideration, leaving them to decide what alternative course to take instead. Gov't Resp. 25. But the more accurate analogy for opinions in this category would be an

agency's general counsel, based on her interpretation of what the law requires, ordering an underling to take some action. *See Pay Cap Op.* at 6 (instructing NSF to take no more than "the time necessary to implement the pay cap in an orderly fashion"); *Attorney's Fees Op.*, 31 Op. O.L.C. at 242 [JA 188] ("[T]he award must come out of [the Department of Housing and Urban Development's] appropriations."). She could not disclaim policymaking responsibility because someone else signed the attorney's-fee check or filed the salary-reduction paperwork.

The government also argues that *Murphy* "squarely rejected th[e] view" that legal opinions can lose their deliberative character when they conclusively set policy. Gov't Resp. 23. But *Murphy* did no such thing. As explained above, that case stands for the unsurprising proposition that legal advice is still deliberative when it counsels a higher-ranking decisionmaker on the advisability of a policy. *See Murphy*, 613 F.2d at 1154 & n.9 (explaining that "the documents themselves make clear that only recommendations[,] review, and legal advice were requested of and provided by the General Counsel" and that the requesting official had ultimate decision-making authority). This Court applied that rule in *EFF*, likening the OLC opinion at issue to the document in *Murphy* because both provided "advice . . . pertaining to the advisability" of a policy that flowed to the official "who had decision-making power" over that policy. *EFF*, 739 F.3d at 9 (cleaned up). And it

explicitly contrasted both documents with those that themselves "represent[] a conclusive or authoritative statement of [an agency's] policy." *Id.* These cases thus contemplate that FOIA requires the disclosure of legal opinions that—like those in this category—directly compel agency action and, as a result, "authoritatively . . . determine the agency's policy." *Id.* at 8.

## III.    Disclosure of the opinions CfA seeks would serve the rule of law.

Disclosure of the categories of OLC opinions CfA seeks would advance the rule-of-law values enshrined in FOIA. As the Supreme Court has made clear, "the public is vitally concerned with the reasons which did supply the basis for an agency policy actually adopted." *Sears*, 421 U.S. at 152. These OLC opinions provide those reasons, and the public is entitled to see them.

The government suggests that the public might discover the working law of federal agencies in other ways, but that is irrelevant. That agencies may at times independently be required "to justify their actions publicly," Gov't Resp. 26, is no excuse for ignoring FOIA's command that the OLC disclose opinions that speak with authority on agency law. Nor should anyone take any comfort from the government's suggestion that the opinions CfA seeks may come to light through litigation. *Id.* As the Best Practices Memo explains, the OLC "is frequently asked to opine on issues of first impression that are unlikely to be resolved by the courts." Best Practices Memo 1 [JA 298].

At the same time, the government's dire predictions of chill are, as then-Judge Jackson observed, "plainly based on sheer speculation" and "largely overblown." Second MTD Op. 23 [JA 259]. There is simply no evidence that disclosure of the narrow set of opinions at issue would "stifle honest and frank communication within the" government. *Coastal States*, 617 F.2d at 866. What evidence there is points in the other direction: the government "already routinely releases" some OLC opinions, and it has done so "without incident." Second MTD Op. 23 [JA 259]; *see also Tax Analysts I*, 117 F.3d at 618 (rejecting claim of chill where similar opinions had been released without disruption).

Agency practice further undermines the government's arguments. First, when two federal agencies have a legal dispute, Executive Order 12,146 generally requires them to submit their dispute to the OLC for resolution. *See* CfA Br. 15. Disclosure or not, this process will continue to take place because it is mandatory. Second, even when an agency has a choice about whether to seek an OLC opinion, the agency seeks it precisely *because* it will authoritatively determine agency law and policy. *See* CfA Br. 60. Third, any remaining risk of chill is further mitigated by the fact that these categories of opinions represent a tiny fraction of the OLC's output. CfA Br. 59. A ruling in CfA's favor would leave the OLC free to withhold informal advice, Kadzik Letter 9 [JA 373], internal communications, and formal written opinions resembling the one in *EFF*.

25

Ultimately, because the opinions at issue set executive branch law and policy, their disclosure would advance "the strong policy of the FOIA that the public is entitled to know what its government is doing and why." *Coastal States*, 617 F.2d at 868. That these opinions may also resolve "some of the more difficult and high-profile questions" in public life, as the government concedes, Gov't Resp. 27, only cuts more heavily in favor of disclosure. It should not be a mystery to the public how the OLC interprets the law and how its edicts bind the rest of the executive branch.

## Conclusion

Respectfully, the Court should reverse the district court's dismissal of CfA's claims seeking OLC opinions issued in the adjudication of private rights and OLC opinions interpreting agencies' non-discretionary legal obligations.

March 19, 2025

Respectfully submitted,

/s/ Alex Abdo
Alex Abdo
Anna Diakun
Jackson Busch
Jameel Jaffer
Knight First Amendment Institute at
    Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
alex.abdo@knightcolumbia.org

*Counsel for Appellee / Cross-Appellant*

26

**Certificate of Compliance**

This brief complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2) because it contains 6,493 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as calculated by the word-counting function.

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: March 19, 2025                          /s/ Alex Abdo
                                                Alex Abdo

**Certificate of Service**

I, Alex Abdo, certify that on March 19, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: March 19, 2025

 /s/ Alex Abdo
Alex Abdo